700 So.2d 926 (1997)
Edwin L. REED d/b/a Ed Reed Organization
v.
LOUISIANA BOARD OF PHARMACY.
No. 96 CA 1792.
Court of Appeal of Louisiana, First Circuit.
September 19, 1997.
Mark V. Marinoff, Baton Rouge, for Plaintiff-Appellee Edwin L. Reed d/b/a Ed Reed Organization.
Roy A. Mongrue, Jr., Carlos M. Finalet, III, Office of Attorney General, Baton Rouge, for Defendants-Appellants Louisiana Board of Pharmacy and Howard Bolton.
Before CARTER, LeBLANC and PARRO, JJ.
PARRO, Judge.
This is an appeal by Howard Bolton ("Bolton"), Executive Director of the Louisiana Board of Pharmacy ("the Board"), and/or the Board,[1] from a judgment mandating the Board to make certain public records available to Edwin L. Reed, d/b/a Ed Reed Organization ("Reed"), and to pay a fine of $100 per day from May 15, 1995, the day those records were first requested, until submitted, plus attorney fees in the amount of $3500, together with court costs. We reverse.

FACTUAL AND PROCEDURAL HISTORY
On August 7, 1995, Reed filed a petition for mandamus, naming the Board in the suit caption, but naming as defendants only "Howard B. Bolton, Executive Director of the Louisiana Board of Pharmacy," all the Board members, the Board's executive committee, and the Board's attorney, Edward S. Bopp ("Bopp"). The petition alleged Reed had made a request to Bolton on May 15, 1995, for certain public records of the Board, but had not received all the records he requested. Reed asked for a writ of mandamus, directing the Board to comply with the Public Records Act and to provide him with the requested documents. He also sought statutory penalties and attorney fees. Service was requested on "The Louisiana Board of Pharmacy through their (sic) attorney of record: Mr. Edward S. Bopp, P.O. Box 37, Arabi, LA XXXXX-XXXX." The trial judge signed an order directing "the defendant, Louisiana Board of Pharmacy," to show cause on September 18, 1995, why it should not comply with the document request and pay all costs and attorney fees for the mandamus proceeding.
*927 There are no minutes of court from September 18, 1995. Handwritten notations in the record suggest the original petition and order were misplaced and that Reed's attorney "will refile pleadings and have noticed and served." A second order was signed, again directed to the Board, setting a show cause hearing for November 27, 1995.
On November 15, 1995, defendant Bopp, through his attorney, J. Eric Bethancourt ("Bethancourt"), filed exceptions raising the objections of insufficiency of service of process and nonjoinder of an indispensable party. Bopp alleged neither he, nor Bolton, nor any of the other defendants named in the petition had been served, and that he had only learned of the pending litigation when he received in the mail a minute entry from the court setting a show cause hearing for November 27, 1995. Bopp also objected to the fact that, although it was listed in the suit caption, the Board was not a named defendant. He argued that if the Board, a separate legal entity, were to be mandated to do something, it should be named and served in accordance with law.
There is no minute entry for November 27, 1995. The next entry in the record shows a hearing was held December 18, 1995. At that hearing, Reed's attorney stated the November 27 hearing had been continued because of a problem with service. He claimed the problem had been corrected, in that Bolton had been "served personally as the director and custodian of records" about three weeks earlier. In briefs to this court, Bolton states, "[i]t was not until November 27, 1995, that service of the petition for mandamus was perfected only upon the Louisiana Board of Pharmacy through its Executive Director, Howard Bolton." There is no service return in the appellate record.
Reed and his attorney were present on December 18 for the hearing on the merits of the petition. On oral motion of Reed's attorney, all defendants except Bolton were dismissed. Reed's attorney then requested sequestration of Bopp, claiming he would be a witness in the case. Bopp was present to represent Bolton. Bopp told the judge he had not realized from the wording of the court's notice that the hearing was for trial of the case on the merits, and that when he called the court he was told it was a hearing on the exceptions; moreover, he had not been notified that he would be called as a witness. Bopp's attorney, Bethancourt, was also present, intending to argue the exceptions he had filed.[2] Bethancourt and Bopp objected strenuously to Bopp's sequestration and Bethancourt moved for a continuance in the event the court decided to sequester Bopp over their objections. The court denied the motion for a continuance, would not consider the exceptions because those had not been set for hearing that day, sequestered Bopp, and ordered the parties to proceed with the hearing on the merits of the mandamus petition.
With Bopp sequestered and unavailable for consultation, Bethancourt had no choice but to handle the proceeding on behalf of Bolton. Bolton testified he had prepared and gathered all the documents requested and, at the suggestion of the Board's executive committee, had sent everything to Bopp to be forwarded to Reed. Reed also testified and claimed certain legal records sent to him appeared to be incomplete, and that the response was deficient because he did not receive tape recordings of the Board's meetings. Bolton explained only portions of the meetings were taped, and this was done just to assist him in preparing accurate transcriptions of certain motions. The tapes were not retained, but were re-used and taped over after the information on them had been transcribed into the written minutes. Bolton said he did not have anything else to provide to Reed in response to his request; he had sent everything he had to Bopp, and presumed Bopp had forwarded everything to Reed. Neither party called Bopp as a witness.
In his judgment, the trial judge found Bolton had "channeled the records sought by *928 Reed to a third party" who was not a designated custodian of the records. He found "that the records requested by Reed were not received and that Bolton, as director of the Board of Pharmacy was arbitrary and capricious in his failure to supply the records sought...." He also found that certain tape recordings, which were public records, were destroyed in contravention of the preservation clause of the Public Records Act. Based on these findings, he ordered the Board to pay $100 per day from May 15, 1995, until it actually produced the records, to pay attorney fees in the amount of $3500, and to pay all costs of the proceedings. This appeal followed.

ANALYSIS
This case is a procedural nightmare, and demonstrates at every turn why the "technicalities" of pleading, service, and notice are indispensable to the fair conduct of litigation, particularly in a summary proceeding. Mandamus is a writ which may be used to direct a public officer, among others, to perform ministerial duties required by law, and is tried in a summary proceeding. LSA-C.C.P. arts. 3781, 3861, and 3863. A petition for a writ of mandamus must be assigned for hearing not less than two or more than ten days after the service of the writ. LSA-C.C.P. art. 3782. If exceptions are filed, they are to be disposed of at the trial. LSA-C.C.P. art. 2593. Citation and service thereof are not necessary in a summary proceeding, however a copy of the contradictory motion or other pleading filed by the plaintiff, along with the court's order assigning the matter for hearing, must be served on the defendant. LSA-C.C.P. art. 2594.
Because a summary proceeding, by definition, proceeds much more rapidly than an ordinary proceeding, it is imperative that the party or parties against whom it is directed be named, served, and noticed accurately. In this case, the errors were legion, and eventually resulted in an untenable judgment against a non-party which must be reversed by this court.
Some of those errors are listed to demonstrate how the problems developed. Although named in the suit caption, the Board was not named as a defendant in the petition. Service was not requested on any of the named defendants. Service was requested on the Board, but not properly, as it was to be made on the "attorney of record," an oxymoron at that stage of the proceedings. At some point in time, service was apparently made on someone  Bolton and/or the Board  but the return on service was not in the appellate record, so this court cannot determine what was in the notice, what was served, when it was served, and exactly who was served or in what capacity. Although LSA-C.C.P. art. 1237 states that an individual who is named in more than one capacity may be personally served, and that such service suffices as service on that individual in all capacities which are evident from the pleadings, this court has found no support for the proposition that such service is sufficient as to an entity whom that individual represents when that entity itself is not a named defendant. At any rate, even if Bolton was served at some time and in some capacity, and even if that service somehow sufficed to bring the Board into the litigation, all parties except Bolton were dismissed at the beginning of the trial. The only defendant left in the suit was Bolton. However, judgment was rendered against the Board, a non-party.
Under LSA-C.C.P. art. 2002, if a judgment is rendered against a defendant who has not been served and has not entered a general appearance, that judgment is an absolute nullity, and can be collaterally attacked by an adversely affected party at any time. In this case, judgment was rendered against an entity which was not even a defendant. If there is such a thing as an absolute, absolute nullity, this case is it. Rendering judgment against an entity which was not a party to the suit was an error of law and the judgment must be reversed.

CONCLUSION
For the above reasons, the judgment of the trial court against the Board, mandating it to pay fines of $100 per day from May 15, 1995, until production of certain public records, and to pay attorney fees of $3500, plus *929 all costs of the proceeding, is reversed. Costs of this appeal are assessed against Reed.
REVERSED.
NOTES
[1] Two motions for suspensive appeal are filed in the record; both were signed by the trial judge on January 18, 1996, granting the appeal. The first one was filed by Bolton, Executive Director of the Louisiana Board of Pharmacy, but was not signed by him or his attorney; the other was filed by the Board, through its undersigned counsel. These exemplify the problem which is at the crux of this case.
[2] Bethancourt and Bopp practiced in the same law firm, but Bopp was the Board's contract attorney. An answer had been prepared on behalf of the Board and was signed by Bethancourt, as a member of Bopp's law corporation, but this answer was never made a part of the record at the hearing.